STATE OF IOWA, appellee, v. ROBERT L. BRANDT, appellant.

No. 47649.

(Reported in 44 N.W.2d 690)

NOVEMBER 14, 1950.

Thomas O. Tacy, of Council Bluffs, for appellant.

Robert L. Larson, Attorney General, Don Hise, First Assistant Attorney General, and Don H. Jackson, County Attorney, for appellee.

WENNERSTRUM, J.—Robert L. Brandt, the defendant, was indicted by the grand jury of Pottawattamie County, Iowa, and therein charged with the crime of breaking and entering. It alleged, in substance, that on March 19, 1949, the defendant broke into and entered an eating place located in an outlying country community. He entered a plea of "not guilty". Upon trial the jury returned a verdict of "guilty". A motion for new trial was overruled and the defendant was sentenced to a term of ten years in the men's reformatory at Anamosa. He has appealed.

The appellant, at the time of the trial, was nineteen years of age and lived with his parents in Council Bluffs, Iowa. After spending a portion of the evening of March 19, 1949 with a young lady friend he met two young men, Opal Ervin and Clarence Robinson, about 11:30 p. m. at a restaurant and tavern in Council Bluffs. They then drove in Ervin's car to a country community called Honey Creek where they purchased a small amount of gasoline. They later went on to Missouri Valley. There the appellant purchased fourteen gallons of gas. It is shown that

Ervin told the appellant that he would stop on the way back and get some money to reimburse him. On the return trip the car was stopped near a place called the Airplane Inn located at Honey Creek. Robinson stayed in front of the building and Ervin and Brandt proceeded to the rear door of the inn where Ervin broke the glass of the rear door and reached in and loosened the padlock and thereafter gained entrance to the building. It is shown by the evidence of the associates of Brandt and later testimony on the part of the appellant that several bottles of liquor and several cartons of cigarettes were obtained from the inn. It is the claim of the appellant that he did not enter the building and that Ervin did not tell him that the packages that were handed him had been stolen. He further stated in his testimony that when they all got back in the car Ervin handed him a box containing a large number of pennies and said, "This will pay for the gas." Approximately two days later cigarettes were found in Ervin's car which were identified as a portion of those stolen from the Airplane Inn. Ervin was arrested and later Robinson and the appellant.

During the time that Brandt was held in custody by the Council Bluffs Police Department he signed a written statement wherein he related his part in the breaking and entering of the building. He admitted that he first acted as a guard when Ervin broke into the Airplane Inn. After entrance was obtained to the building the appellant stated in the claimed confession that he followed Ervin into it and that he helped carry out several bottles of liquor, some cartons of cigarettes and also a box in which there were pennies. Thereafter, according to his statement, they returned to Council Bluffs. In the first paragraph of the claimed confession it is stated that, "No promises, threats or inducements have been made to me, and I have been told that I need not make any statement of any kind."

During presentation of the State's case Brandt's statement was offered in evidence. Counsel for the appellant then objected to its admissibility in evidence on the ground that appellant was induced by promises of leniency and other inducements to sign the statement and that it was obtained in a secret inquisition while the appellant was being held in custody. Counsel for appellant then asked permission of the court to introduce evidence

to show that he was threatened by the police officers having him in charge with physical harm, that he was promised a lighter sentence if he would sign a statement confessing his guilt and that the statement which was offered in evidence was signed by him solely because of these facts. The defendant asked that testimony be taken in the absence of the jury so that the court might determine, as a matter of law, whether the confession was of such a free and voluntary character as to be admissible in evidence.

Thereafter the State's witness then on the stand was cross-examined by the defendant's counsel relative to the manner in which the witness had interrogated the appellant at the time the alleged confession was obtained. This cross-examination apparently was had late in the afternoon of one of the days of the trial. On the following morning the defendant was called as a witness in the absence of the jury relative to what had taken place at the time prior to his giving the statement to the police officer and the later signing of it. He therein testified:

"I asked him if I might use his phone to call my parents, or lawyers, attorneys. He said, 'No, we have the right to keep you here either seventy-two hours or until you sign this confession, before we release you.'" The appellant further testified: "In preparing this statement he told me it would be a much lighter sentence and so he handed me two other statements and I said I didn't believe they could have written such things about me and that it just wasn't true and he brought them down and they said they had signed a statement and that it was their signatures." (This comment referred to statements previously signed by Robinson and Ervin.) He further testified: "I signed the confession on account of the promises and threats which were made by the officers. I believed that I would not be allowed to communicate with my parents or a lawyer for seventy-two hours if I didn't sign it. That is what Captain Montgomery told me, and I knew they would be worrying about me long before then, long before I signed the statement. I first got to see my parents on Tuesday morning, approximately 10:30 or 11 o'clock. Up to that time I had not been permitted to use the telephone. I didn't know whether they were coming or know if they knew about it yet."

Two other witnesses who were called in connection with the hearing relative to the admissibility of the purported confession were the father and brother of the appellant. They testified as to their inability to communicate with him after his arrest and for some time thereafter. At the conclusion of the hearing relative to the admissibility of the statement, the State then withdrew its offer of the purported confession, reserving the right to offer it again at a later time. This permission was granted by the court and an exception was taken by the appellant.

The State then proceeded to present further testimony in support of the indictment. The other witnesses who were called were a patrolman of the Council Bluffs Police Department, who testified as to the manner in which the statement signed by the appellant was obtained, and Clarence Robinson, one of the alleged associates of the appellant. Opal Ervin had previously testified.

During the presentation of evidence on behalf of the State there was a further offer of the purported confession made by the State. The court, in ruling upon it, sought to reserve the right to take from the consideration of the jury all matters contained in the exhibit. However, it stated it would permit the reading of the exhibit to the jury. During the presentation of the State's rebuttal testimony, the court ruled to the effect that in its judgment there was sufficient corroboration to permit the confession to be submitted to the jury.

It should be stated that in connection with the State's case Captain Merriman of the Council Bluffs Police Department testified that he did not make any threats against the appellant, did not make any promises to him, and in no way sought to compel him to sign the statement. Another officer, Policeman Gillman, who was a witness to the statement, also testified that no threats or promises were made and that appellant signed the statement voluntarily. The State, on presenting its rebuttal, also showed by officers of the police department that the signing of the statement was freely made by the appellant.

The record, as made by the court and the respective counsel, resulted in a rather confusing situation. However, we have concluded that the procedure was proper and that the question as to this possible error was properly preserved for our considera-

tion. Counsel for appellant has assigned twelve claimed errors which he asserts justified reversal. However, we can and shall summarize them in a lesser number.

I. It is the rule in this state that when the evidence is in conflict whether a confession is voluntary or not, this question should be left to the jury under proper instructions. State v. Hofer, 238 Iowa 820, 829, 28 N.W.2d 475, and cases cited; State v. Webb, 239 Iowa 693, 699, 31 N.W.2d 337, and cases cited. The appellant asserts as claimed error the refusal of the court to permit the cross-examination of Captain Merriman of the police department relative to the claimed involuntary character of the statement. This situation developed early in the direct examination of this witness by the State. Counsel for appellant, prior to the conclusion of the examination in chief of this witness, sought to cross-examine him relative to the giving of the statement. This was denied by the trial court. Following a colloquy between appellant's counsel and the court, the jury was excused and the witness was cross-examined by counsel for appellant and the witness denied making any threats toward appellant or offering any leniency if a statement would be made. At the conclusion of the appellant's presentation of evidence, the State offered as rebuttal witnesses Captain Merriman and another police officer. They again denied that they had told appellant that it would be easier for him if he gave a statement. Appellant's counsel waived cross-examination of each of these rebuttal witnesses.

We have concluded that counsel for appellant, by the proceedings early in the trial as well as during the State's rebuttal, had ample opportunity to cross-examine the witness, that appellant's rights were fully protected and that there was no error in the court restricting the examination of Captain Merriman during his direct examination and prior to its conclusion. Besides, as previously stated, this witness was cross-examined in the absence of the jury after request for the exclusion of the jury was made by counsel for appellant. This is the procedure approved in this state. State v. Plude, 230 Iowa 1, 6, 296 N.W. 732. We believe that under the entire record the court properly admitted in evidence the statement of the appellant for the con-

388

sideration of the jury as to its voluntary or involuntary character. State v. Sims, 241 Iowa 641, 645, 40 N.W.2d 463, 465.

 II.  Complaint is made because the trial court admitted in evidence the testimony of Ervin and Robinson, the admitted accomplices of the appellant in the commission of the alleged crime.

Section 782.5, 1950 Code provides that a conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other testimony tending to connect a claimed defendant with a commission of a crime. It is the appellant's contention that the testimony of Ervin and Robinson, the accomplices in this case, was not corroborated and, therefore, it was error for the court to allow their testimony to go to the jury. It should be kept in mind that the appellant was present at the time of the commission of the crime charged in the instant case. He admitted his presence there in his own testimony. In the claimed statement or confession which he made he also admitted his presence at the scene of the claimed crime. We believe that these facts are sufficient corroboration of the testimony of the accomplices. In State v. O'Callaghan, 157 Iowa 545, 550, 551, 138 N.W. 402, 405, where the facts relative to the defendant's participation in the crime are shown to be somewhat similar to those of the appellant herein, we said:

"Defendant was a witness on his own behalf, and he does not deny his association with all of these men and his meeting with them, not only about and near the courthouse on the evening in question, prior to the commission of the offense, but also at the places named by Rhodes after the crime was committed. Indeed, he admits that he was with these men at the places named. He also admits that he had a conference with Hatch at the corner of Fifth and Grand avenues before the parties met, on the evening the crime was committed, at the government building. These facts alone, either admitted by the defendant or proved by independent testimony, were sufficient to justify a finding by the jury that Rhodes told the truth and that defendant in fact aided and abetted the commission of the offense."

We also held in the case of State v. Morrison, 221 Iowa 3, 265 N.W. 355, that where there was evidence of admissions which

a defendant gave a deputy sheriff, this was sufficient corroboration of an accomplice to justify the submission of the case to the jury. To the same effect is our holding in the case of State v. Owen, 196 Iowa 285, 286, 194 N.W. 187. See also 22 C. J. S., Criminal Law, section 812d(2), page 1403. We, therefore, hold that the alleged confession and the statements therein made, along with appellant's own admissions made in his testimony, provide sufficient corroboration of the accomplices' testimony. As heretofore commented upon, the consideration to be given the purported confession was for the jury under proper instructions.

III. It is claimed that the trial court committed error in permitting certain questions to be asked character witnesses on cross-examination and particularly of the witness, Brown. Preliminary to our comment on this question it should be stated that on cross-examination of appellant he admitted he had previously been convicted of a felony. On the cross-examination of the witness, Brown, after he had testified that the reputation or moral character of the appellant was good, he was asked: "Do you know about the felony he was convicted of?" This was objected to as not proper cross-examination. The court directed the witness to answer. The witness stated: "Yes, I knew about that." In the case of State v. Bell, 206 Iowa 816, 824, 221 N.W. 521, 524, in commenting on the cross-examination of character witnesses, we said: "It is apparent * * * that the cross-examination of a character witness must be confined to reports and rumors in the community which affect the character of the defendant as to the particular trait involved." In this last cited case many Iowa cases are referred to bearing on this question. We believe that there was error in permitting the cross-examination as heretofore set out but for the reason stated hereafter we do not believe it was prejudicial.

Immediately after appellant admitted he had been convicted of a felony and upon redirect examination he testified in detail, under questioning of his own counsel, relative to this former conviction. By reason of this situation we do not believe there was prejudicial error in the question asked the character witness. Other matters of this same nature, of which appellant complains,

show the trial court either sustained appellant's counsel's objections or there was no objection made.

IV. As further grounds for reversal the appellant complains because the court failed to give a requested instruction which, in part, stated that the burden of proof is on the State to prove that the purported confession was freely and voluntarily made. In the instruction which the court did give concerning the statement signed by the defendant, the jury was advised that before they could give any consideration or weight to this particular statement they must first determine whether the statement was freely and voluntarily made and signed by the defendant. This instruction further stated that if the jury found that the statement was not freely and voluntarily made they should give it no consideration whatever as bearing on the guilt or innocence of the defendant. It was also therein stated that if the jury found that the said statement was made after any threats, inducements or promises, however slight, were made by any of the officers having the defendant in charge, then said statement was not freely and voluntarily made and the jury was to give the statement no weight. The instruction which the court did give is substantially similar to the instruction which we approved in our recent case of State v. Sims, 241 Iowa 641, 40 N.W.2d 463. We hold that there was no error in the court's refusal to give the requested instruction and that appellant was amply protected by the requirements set out in the instruction given.

We find no basis or justification for reversal. We, therefore, affirm.—Affirmed.

GARFIELD, C. J., and BLISS, OLIVER, MANTZ, SMITH, and HAYS, JJ., concur.

MULRONEY, J., concurs in result.

HALE, J., not sitting.